REITLER KAILAS & ROSENBLATT LLC
Jocelyn Jacobson (JJ-9716)
885 Third Avenue
20th Floor
New York, NY 10022
Phone: (212) 209-3053
Fax: (212) 371-5500
Email: jjacobson@reitlerlaw.com
*Attorney for Plaintiff Brendan O'Brien*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

BRENDAN O'BRIEN,

Plaintiff,

-against-

BEATRICE VAN ECK, VAN ECK, INC. and TB2, INC.,

Defendants.

------------------------------------------------------------x

Index # 16-cv-4038

**COMPLAINT**

Plaintiff Brendan O'Brien ("O'Brien" or "Plaintiff"), by his attorneys, Reitler Kailas & Rosenblatt LLC hereby alleges, against defendants Beatrice Van Eck ("Ms. Van Eck"), Van Eck, Inc. ("Van Eck, and with Ms. Van Eck, the "Van Eck Defendants") and TB2, Inc. ("TB2" and collectively with the Van Eck Defendants, the "Defendants"), as follows:

**NATURE OF ACTION**

1. This is an action seeking monetary damages and injunctive and declaratory relief based on claims of fraudulent inducement, conversion, unjust enrichment, quantum meruit and copyright infringement by the Defendants.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this action under the copyright laws of the United States, 17 U.S.C. § 101 et seq. and 28 U.S.C. § § 1331, 1338 and supplemental jurisdiction under 28 U.S.C. §1367(a).

3. Plaintiff is an individual resident in the State of New York, Kings County.

4. Upon information and belief, this Court has personal jurisdiction over the Defendants because (i) Ms. Van Eck is an individual citizen of New York State, County of New York, (ii) Van Eck is a New York corporation with its principal place of business in New York State, County of New York and is doing business in New York State, County of New York and (iii) TB2 is a Delaware corporation registered to do business in New York State with its principal place of business in New York State, County of New York.

5. Venue is proper in this District under 28 U.S.C. § 1391(b), 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400(a).

**PARTIES**

6. Plaintiff O'Brien is an individual engaged in writing computer software code, primarily for use in web applications ("apps") for download to and use on mobile phones and desktop computers.

7. Upon information and belief, Defendant Ms. Van Eck is an individual residing in this judicial District.

8. Upon information and belief, Defendant Van Eck is a corporation established under the laws of New York having a principal place of business at 790 Riverside Drive, Apt. 4D, New York, New York 10032.

9. Upon information and belief, Defendant TB2 is a Delaware corporation registered to do business in the state of New York, County of New York, with a principal place of business at 790 Riverside Drive, Apt. 4D, New York, New York, 10032.

10. Upon information and belief, Defendant Ms. Van Eck is the founder and principal of both Van Eck and TB2.

## FACTUAL BACKGROUND

### A. The Registered Work

11. O'Brien is an individual who writes computer software code, including code for web applications for download to and use on mobile and desktop devices.

12. O'Brien is the author and holder of copyright in a work registered in the U.S. Copyright Office as registration Number TXu 1-980-168 (the "Registered Work"). The Registered Work consists of computer software code.

13. The Registered Work is an original work of authorship.

14. The Registered Work has been fixed in a tangible medium of expression.

15. The Registered Work is copyrightable subject matter under the laws of the United States.

### B. Dealings with the Van Eck Defendants

16. Ms. Van Eck on behalf of herself and her wholly owned company, Van Eck, approached O'Brien to write the computer software code for a proposed web app to be used by models in the fashion industry (the "App") that Ms. Van Eck wanted to use personally and also to commercialize through Van Eck.

17. When O'Brien and Ms. Van Eck discussed the work to be done by O'Brien, O'Brien made clear that he would retain ownership of all his intellectual property in the

computer software code he would write for the App but that he would provide the Van Eck Defendants with a license in such code. He also stated that he would be incorporating computer software code he had previously written into the code for the Van Eck Defendants.

18. O'Brien also agreed to be paid a low rate for his services working on the App because he intended, as Ms. Van Eck knew, to expand his services as a computer software code developer and was using his work on the App in furtherance of that goal. Thus his requirement to retain ownership of his intellectual property was an essential component of the agreement.

19. Ms. Van Eck presented O'Brien with a fully drafted consulting agreement for the work to be done by O'Brien. There was no negotiation over the language of the agreement and the Van Eck Defendants knew that O'Brien did not read the agreement before executing it.

20. In fact, at the time that Ms. Van Eck handed O'Brien the consulting agreement, Ms. Van Eck assured O'Brien that, as per his request, he would retain ownership of all intellectual property in his computer software code, that the consulting agreement did not contain an assignment of his intellectual property and that Van Eck would only have a license to use such computer software code in the App.

21. O'Brien executed the consulting agreement immediately thereafter and in reliance on Ms. Van Eck's statements concerning the terms of the consulting agreement.

22. O'Brien relied on the statements made by Ms. Van Eck in executing the consulting agreement with Van Eck dated August 15, 2014 (the "Consulting Agreement") and Ms. Van Eck intended such reliance by O'Brien in making the representations.

23. Ms. Van Eck's representations were false and known to the Van Eck Defendants to be false at the time they were made. In fact, contrary to Ms. Van Eck's representations, the Consulting Agreement provided that all copyrightable material O'Brien developed for Van Eck was the sole property of Van Eck.

24. During the course of the dealings between O'Brien and the Van Eck Defendants after execution of the Consulting Agreement, the Van Eck Defendants continued to deceive O'Brien as to the terms of the Consulting Agreement and made clear that O'Brien had retained ownership in the computer software code he was developing. This was consistent with their prior representations.

25. At various times in emails to Ms. Van Eck, O'Brien would state that the project for Van Eck was a "test run" intended to allow him to engage in similar projects as a consultant. Ms. Van Eck never claimed that O'Brien did not own the computer software code he was developing but instead responded that she "understood" that this was the purpose of the work.

26. Thus the Consulting Agreement was fraudulently induced and is not binding on O'Brien.

27. O'Brien retains ownership of all computer software code written for Van Eck. O'Brien wrote the software code for the App, including code that he had previously written that he incorporated into the App. The computer software code written for the App by O'Brien and that developed by O'Brien prior to his relationship with the Van Eck Defendants that he incorporated into the App make up the Registered Work.

28. O'Brien was paid a total of $7,500 for his work in developing the computer software code for the App and for certain fixes and updates. The last payment for this

work was made to O'Brien on November 4, 2014 at which time all work to that date had been accepted by the Van Eck Defendants.

29. Thereafter O'Brien continued to upgrade the computer software code for the App but was paid nothing. O'Brien continued work on the App for the Van Eck Defendants until November 23, 2015; at that time he ceased work after he learned that the Van Eck Defendants were claiming that they owned all of the computer software code that had been written by O'Brien for the App.

30. Consequently, Van Eck has, at best, an irrevocable license to use the computer software code that was written prior to November 4, 2014 for the Van Eck Defendants' App (the "Licensed Registered Work") but the Van Eck Defendants had, at best, only a revocable license to use any of the computer software code written after November 4, 2014. The revocable license was revoked on January 19, 2016 and since that time the Van Eck Defendants have been infringing on O'Brien's copyright in using and distributing computer software code written by O'Brien after November 4, 2014 (the "Unauthorized Registered Work").

31. Even if the Consulting Agreement was effective, by its express terms the Consulting Agreement terminated upon "final completion of the Services", which were defined as the services described in the attached Exhibit A.

32. Exhibit A listed two services: design services and engineering services including a "fully functioning web and mobile application."

33. Exhibit A further provided that Van Eck would pay O'Brien $2,500 for the services but only upon acceptance of the services by Van Eck.

34. O'Brien performed the services creating computer software code for the App. Van Eck accepted the services performed by O'Brien pursuant to Exhibit A and paid O'Brien $2,500 for the services listed in Exhibit A.

35. Exhibit A contemplated the possibility of additional projects to be memorialized in schedules to Exhibit A. There was one additional project memorialized in a Schedule A-1, which listed a number of fixes and updates for the App.

36. Schedule A-1 similarly stated that payment would occur upon acceptance of the Services set forth in that Schedule.

37. O'Brien performed the services listed in Schedule A-1. Van Eck accepted the services performed by O'Brien pursuant to Schedule A-1 and paid O'Brien $5,000 on November 4, 2014 for the services listed in Schedule A-1.

38. Thus as of November 4, 2014 Van Eck had accepted all services performed by O'Brien to that date. No further payment has been made to or received by O'Brien from any of the Defendants.

39. O'Brien continued to work on the computer software code for the App after November 4, 2014 at the request of the Van Eck Defendants but received no payment for such work. There were also no additional schedules or agreements pertaining to such work. As noted, such work continued until November 23, 2015.

40. O'Brien not only owns all computer software code he developed for the App after November 4, 2014 but Van Eck merely held a non-exclusive license for such work issued by O'Brien to Van Eck that was revocable at will.

41. On January 19, 2016, O'Brien wrote to the Van Eck Defendants' counsel revoking the non-exclusive license to all computer software code developed by O'Brien after November 4, 2014.

42. Despite the revocation of the license, upon information and belief, the Van Eck Defendants continued to use and distribute the Unauthorized Registered Work.

43. Upon information and belief, the Van Eck Defendants are also claiming ownership of computer software code developed by O'Brien prior to and/or separate from his work on the App but which was included in the App, such as the computer platform he developed prior to any relationship with the Defendants. Even in the Consulting Agreement, the Van Eck Defendants provided that O'Brien retained ownership of this prior and/or separate work while Van Eck was granted a nonexclusive irrevocable license for this work (the "Additional Licensed Registered Work"). However, the Van Eck Defendants have made vague threats to sue O'Brien if he uses the computer software code that was included in the code for the App in future endeavors. These threats have resulted in O'Brien's uncertainty as to whether the Van Eck Defendants are claiming ownership of the Additional Licensed Registered Work, which uncertainty requires clarification.

44. The Van Eck Defendants claim ownership of and the right to use all computer software code developed by O'Brien relating to the App, including the Registered Work. As noted, the Registered Work includes all computer software code developed by O'Brien included in the App or needed to run the App.

45. The App is a web application that is accessed through the website of the Van Eck Defendants. Once the App is accessed it can be saved to a user's home screen as would

an app developed for an iPhone or Android phone and downloaded to a user's smartphone or computer.

46. Upon information and belief, the Van Eck Defendants own the domain, ivymdl.com, through which the App can be accessed. The Van Eck Defendants could remove access to the App (or any aspect of the App) from their website but have not done so.

47. Ms. Van Eck personally uses the App in connection with her modeling appointments. She has also invited other models to use the App and, upon information and belief, has continued to do so. The most recent new user to the App was added on April 23, 2016. Even after downloading the App, a user can only use the App as long as the Van Eck Defendants continue to provide access to the App since the App only runs if the Van Eck Defendants' server allows it to do so.

**C. Dealings with TB2**

48. During the course of their working relationship, O'Brien and Ms. Van Eck also agreed to start a new company, defendant TB2, in which O'Brien was to own 40 percent of the company and Ms. Van Eck was to own 60 percent of the company.

49. TB2 was incorporated in Delaware on March 17, 2015 and was registered in New York on March 30, 2015.

50. In furtherance of this agreement, O'Brien provided his capital contribution in the amount of $8,000 to TB2. O'Brien received a cash flow statement indicating the receipt of his funds and their recording as a capital contribution.

51. The Defendants deny that O'Brien owns any interest in TB2 and have refused to return his capital contribution.

**COUNT I**

## COPYRIGHT INFRINGEMENT

52. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51 as if set forth fully herein.

53. The Van Eck Defendants were put on notice on January 19, 2016 that the license to use and distribute that portion of the Registered Work developed after November 4, 2014 (i.e., the Unauthorized Registered Work) was revoked.

54. Despite this notice, the Van Eck Defendants continued to use and distribute the Unauthorized Registered Work after January 19, 2016.

55. The Van Eck Defendants' continued and unauthorized uses and distribution of the Unauthorized Registered Work after January 19, 2016 are infringements of Plaintiff's copyright in violation of the Copyright Act, 17 U.S.C. § 106.

56. As a direct and proximate result of the foregoing acts of the Van Eck Defendants, the Plaintiff has been damaged in an amount to be determined at trial but no less than $50,000.

WHEREFORE, the Plaintiff requests the following relief:

A. Actual damages and profits under 17 U.S.C. § 504 in an amount to be determined at trial but no less than $50,000;

B. A permanent injunction requiring the Defendants to cease and desist from reproducing, distributing, or otherwise using the Unauthorized Registered Work without authorization from the Plaintiff;

C. An order requiring the impoundment and destruction of all copies of the Unauthorized Registered Work in Defendants' possession, custody or control;

D. Such other and further relief as this Court deems just and proper.

**COUNT II**
**DECLARATORY JUDGMENT**

57. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 56 as if set forth fully herein.

58. The Van Eck Defendants' continued use and distribution of the Unauthorized Registered Work is based on their claim that they have full ownership rights in all work developed by O'Brien relating to the App, i.e., the Registered Work.

59. The Van Eck Defendants have repudiated O'Brien's ownership of the work developed by O'Brien relating to the App, i.e., the Registered Work.

60. O'Brien is the sole author of the Registered Work.

61. O'Brien only provided the Van Eck Defendants with, at best, an irrevocable license for the Licensed Registered Work.

62. Included in the Licensed Registered Work is work that O'Brien created prior to his work on the App and/or separate from his work on the App. Although even the Consulting Agreement acknowledges that O'Brien retains ownership of such intellectual property and that Van Eck has an irrevocable license to use such Additional Licensed Registered Work, the Van Eck Defendants have claimed ownership of all such work.

63. As a result, Plaintiff is entitled to a declaratory judgment that he is the sole owner of the Registered Work, that the Van Eck Defendants have no rights to use or distribute the Unauthorized Registered Work, that the Van Eck Defendants have no ownership rights in the Licensed Registered Work and the Additional Licensed Registered Work and no rights to limit O'Brien's use of the Registered Work.

WHEREFORE, the Plaintiff requests the following relief:

A. A declaration that O'Brien is the sole owner of the copyright in the Registered Work with all rights granted under 17 U.S.C. §106;

B. A declaration that the Van Eck Defendants have no right to reproduce, distribute or otherwise use the Unauthorized Registered Work;

C. A declaration that the Van Eck Defendants have no ownership rights in the Registered Work (including, but not limited to, the Licensed Registered Work and the Additional Licensed Registered Work) and no rights to limit O'Brien's use of any of the Registered Work;

D. Such other and further relief as this Court deems just and proper.

**COUNT III**
**FRAUDULENT INDUCEMENT**

64. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 63 as if set forth fully herein.

65. The Van Eck Defendants made material misrepresentations of fact concerning the terms of the Consulting Agreement and the ownership of the work to be developed by O'Brien pursuant thereto.

66. Upon information and belief, the Van Eck Defendants had the Consulting Agreement prepared by counsel.

67. The Van Eck Defendants handed the Consulting Agreement to O'Brien, made the material misrepresentations concerning the terms thereof and then watched him sign the Consulting Agreement immediately thereafter without reading it.

68. O'Brien relied on the misrepresentations made by the Van Eck Defendants in executing the Consulting Agreement and the Van Eck Defendants intended such reliance by O'Brien in making the misrepresentations.

69. The Van Eck Defendants' representations were false and known to the Van Eck Defendants to be false at the time they were made.

70. O'Brien's reliance on the misrepresentations of the Van Eck Defendants was reasonable.

71. As a direct and proximate result of the foregoing acts of the Van Eck Defendants, the Plaintiff has been damaged in an amount to be determined at trial but no less than $100,000.

72. As a direct and proximate result of the foregoing acts of the Van Eck Defendants, the Consulting Agreement should be declared null and void and be rescinded.

73. As a direct and proximate result of the foregoing acts of the Van Eck Defendants, the Plaintiff should be declared the sole owner of the Registered Work, and the Van Eck Defendants declared to have no ownership rights in the Registered Work.

WHEREFORE, the Plaintiff requests the following relief:

A. Compensatory damages in an amount to be determined at trial but no less than $100,000;

B. Rescission of the Consulting Agreement;

C. A declaration that the Consulting Agreement is null and void;

D. A declaration that O'Brien is the sole owner of the copyright in the Registered Work with all rights granted under 17 U.S.C. §106;

E. A declaration that the Van Eck Defendants have no ownership rights in the Registered Work and no rights to limit O'Brien's reproduction, distribution or use of the Registered Work;

F. Such other and further relief as this Court deems just and proper.

**COUNT IV**
**CONVERSION**

74. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 73 as if set forth fully herein.

75. O'Brien paid TB2 $8,000 for a 40 percent interest in TB2. TB2 received such funds and recorded them as a capital contribution.

76. TB2 never afforded any rights to O'Brien nor provided final subscription documents for O'Brien's interest. TB2 has no rights to retain the $8,000 without providing O'Brien his equity in TB2.

77. TB2 retained the $8,000 and has refused to return these funds to O'Brien despite demand for repayment.

78. As a direct and proximate result of the foregoing acts of TB2, the Plaintiff has been damaged in an amount to be determined at trial.

WHEREFORE, the Plaintiff requests the following relief:

A. Repayment of the $8,000 with interest or a declaration that O'Brien is a 40% shareholder of TB2;

B. Such other and further relief as this Court deems just and proper.

**COUNT V**
**UNJUST ENRICHMENT**

79. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 78 as if set forth fully herein.

80. O'Brien paid TB2 $8,000 for a 40 percent interest in TB2. TB2 received such funds.

81. TB2 never afforded any rights to O'Brien nor provided any benefit to O'Brien for the funds it received from him. TB2 has no rights to retain the $8,000.

82. TB2 retained the $8,000 and has refused to return these funds to O'Brien despite demand for repayment.

83. O'Brien developed and provided to the Van Eck Defendants the Unauthorized Registered Work.

84. The Van Eck Defendants never paid O'Brien for the Unauthorized Registered Work.

85. The Van Eck Defendants retained and continue to use and distribute the Unauthorized Registered Work.

86. The Van Eck Defendants were unjustly enriched by the work O'Brien did after November 4, 2014 on the App and by their right to use the Unauthorized Registered Work until such right was revoked on January 19, 2016.

87. Accordingly, the TB2 Defendant owes O'Brien $8,000 and the Van Eck Defendants owe O'Brien for the use of the Unauthorized Registered Work from November 4, 2014 through January 19, 2016 in an amount to be determined at trial but no less than $255,000.

WHEREFORE, the Plaintiff requests the following relief:

A. Compensatory damages in an amount to be determined at trial but no less than $255,000;

B. Repayment of the $8,000 plus interest;

C. Such other and further relief as this Court deems just and proper.

**COUNT VI**
**QUANTUM MERUIT**

88. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 87 as if set forth fully herein.

89. The Van Eck Defendants requested that O'Brien continue to work on the App after November 4, 2014.

90. O'Brien continued to work on the App after November 4, 2014.

91. There was no contract that covered the work to be done after November 4, 2014 and the Van Eck Defendants made no payments to O'Brien after November 4, 2014.

92. As a result of the foregoing, Plaintiff is entitled, on the basis of quantum meruit, to be compensated for the fair and reasonable value of the services he rendered to the Van Eck Defendants in connection with the App after November 4, 2014, in an amount to be determined at trial but no less than $255,000.

WHEREFORE, the Plaintiff requests the following relief:

A. Compensatory damages in an amount to be determined at trial but no less than $255,000;

B. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
May 31, 2016

REITLER KAILAS &
ROSENBLATT, LLC
Attorneys for Plaintiff

By: [signature]
Jocelyn Jacobson
885 Third Avenue, 20th Floor
New York, NY 10022
Tel. (212) 209-3053